REX HWANG - State Bar No. 221079
rhwang@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Keith D. Nowak (*pro hac vice* application to be filed)
nowak@clm.com
Jeffrey S. Boxer (*pro hac vice* application to be filed)
boxer@clm.com
CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, New York 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232

*Attorneys for Plaintiff Asiana Licensing, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ASIANA LICENSING, INC., <br><br> Plaintiff, <br><br> v. <br><br> SABAN BRANDS LLC, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR:** <br><br> 1. **BREACH OF CONTRACT** <br> 2. **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING** <br> 3. **TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** <br><br> **JURY TRIAL DEMANDED** |

1
**COMPLAINT**

Plaintiff Asiana Licensing, Inc. ("Asiana") submits the following Complaint against Defendant Saban Brands LLC ("Saban") as follows:

## THE PARTIES

1. Asiana is company formed under the laws of the Republic of Korea with its principal place of business at A-305, Trump World 1 Building, Yeoido-dong-ro 143, Youngdungpo-gu, Seoul, 07342, South Korea.

2. Saban is a Delaware limited liability company with its principal place of business at 10100 Santa Monica Blvd., Suite 500, Los Angeles, California, 90067.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the plaintiff is a citizen of a foreign state and the defendant is a citizen of a U.S. state. Asiana is a South Korean corporation based in South Korea. Saban is a Delaware company based in California. The amount in controversy in this action exceeds $75,000.

4. This Court has personal jurisdiction over Saban because Saban resides and has its principal place of business in Los Angeles, California. Saban submitted to the jurisdiction of this Court in the contract between the parties relating to this action.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Saban resides and has its principal place of business in this District and the contract between the parties relating to this action provides for venue in this District.

## FACTUAL ALLEGATIONS

6. This action arises out of Saban's wrongful termination of an agreement between Asiana and Saban pursuant to which Asiana provided licensing and merchandising services for Saban's Paul Frank brand in Korea. Not only did Saban improperly terminate that agreement just months into its two year term, but Saban improperly informed licensees with whom Asiana worked in Korea that Asiana had been terminated and replaced by a new licensing representative prior to the actual termination of the agreement and prior to Asiana getting notice of the purported

termination. Saban's actions have harmed Asiana, including by causing Asiana to lose revenue it is entitled to receive under the agreement, interfering with Asiana's relationships with licensees in Korea, and damaging Asiana's reputation in this important market.

7. Asiana provides licensing and merchandising services for international brands in Korea. Companies retain Asiana to generate, solicit and/or negotiate licensing opportunities for their brands in Korea.

8. Asiana is a leading company in the licensing and merchandising industry in Korea, and it has provided licensing and merchandising services to U.S. and other companies for more than two decades.

9. On information and belief, Saban owns and develops a portfolio of properties focused on entertainment and lifestyle.

10. Saban, on information and belief, owns or controls Paul Frank Industries LLC ("PFI"). Saban is the authorized representative of PFI.

11. PFI, in turn, owns or controls the Paul Frank clothing and accessories brand and trademarks.

12. Saban and Asiana originally entered into an agreement effective September 24, 2010 for Asiana to provide licensing services to Saban in connection with the Paul Frank brand.

13. Asiana was successful in helping to grow the Paul Frank brand in Korea. As a result, Asiana received commissions of about $218,000 in 2013 and $387,000 in 2014 from royalty payments to Saban from Korean licensees.

14. Despite this success, in or about 2015, Saban informed Asiana that Saban planned to stop entering into most new licenses for the Paul Frank brand in Korea and would not renew existing licenses in Korea after January 1, 2016. Instead, Saban planned to manufacture and sell Paul Frank products directly into the Korean market.

7993992

15. In the wake of this decision, the royalties Saban received from Korean licenses – and thus the commissions Asiana received from Saban – decreased in 2015 and 2016.

16. As a result of Saban's plans to manufacture and sell Paul Frank products directly into Korea, some Korean companies that had licensed the Paul Frank brand in Korea found replacement brands and did not renew their licenses. At least three other Korean companies that had licensed the Paul Frank brand have gone bankrupt.

17. By late 2016, Saban informed Asiana that its plan to manufacture and sell Paul Frank products into Korea had not been successful and that it planned to resume actively licensing the Paul Frank brand in Korea.

18. Saban and Asiana entered into a new Representation Agreement as of January 1, 2017 (the "Agreement").

19. Pursuant to the Agreement, Saban appointed Asiana as Saban's representative in Korea for licensing and merchandising the Paul Frank brand.

20. Asiana agreed, among other things, to develop (subject to Saban's approval) a Licensing Plan identifying the "goals and objectives, time frames for action, commitments and overall direction for the exploitation of the" Paul Frank brand in Korea. Agreement, § 3(a).

21. Section 3 of the Agreement also states that Asiana would determine the "time, method and means for providing services" to Saban and does not provide a specific timeframe or format for the development of the Licensing Plan.

22. Section 6 of the Agreement provides that Asiana would receive commissions on revenues received by Saban from licensing or merchandising opportunities solicited and originated by Asiana.

23. Saban and Asiana entered into a First Amendment to Representation Agreement (the "Amendment") dated as of January 1, 2017 that modified and replaced section 6(a) of the Agreement. Pursuant to the Amendment, Asiana is

entitled to receive certain percentages of revenues attributable to License Agreements for the Paul Frank brand in Korea.

24. The Amendment requires that all commissions due to Asiana must be paid within 30 days of the end of the calendar month in which Saban receives the associated revenues.

25. Section 7(c)(iii) of the Agreement also provides that, unless it breached the Agreement, Asiana is entitled to receive (a) 100% of commissions on revenues from licensing agreements entered into during the term of the Agreement that Saban receives in the first six months after termination of the Agreement and (b) 50% of commissions on revenues from licensing agreements entered into during the term of the Agreement that Saban receives in the second six months after termination of the Agreement.

26. Section 7(a) of the Agreement provides that the Agreement commences on January 1, 2017 and ends on December 31, 2018.

27. Saban can terminate the Agreement prior to December 31, 2018 only under narrowly defined circumstances set forth in Section 7(b) of the Agreement. Pursuant to Section 7(b)(i) of the Agreement, if Asiana "fails to materially perform pursuant to the Licensing Plan, or breaches any of its obligations under this Agreement", then Saban may give Asiana written notice of those failures or breaches. If Asiana has not cured those failures or breaches within fifteen days of that notice, then Saban may terminate the Agreement.

28. Section 12(f) of the Agreement states that the Agreement is governed by the laws of the State of California and that the parties submit to the jurisdiction of the state and federal courts located in Los Angeles County, California for any action or proceeding arising out of or relating to the Agreement.

29. Asiana worked hard and expended significant efforts and resources to successfully license the Paul Frank brand in Korea.

30. Asiana concluded that dramatic steps would be needed to reinvigorate the market for Paul Frank brands after Saban's misguided attempts in 2015 and 2016 to manufacture and sell Paul Frank products directly in Korea instead of through licensees.

31. Accordingly, in an email to Saban dated December 11, 2016, Asiana reviewed the status of the Paul Frank brand in Korea in the wake of Saban's failed attempt to end licensing in Korea and suggested launching 500 SKUs in ten categories simultaneously in May 2017 to attract consumers' attention. As Asiana explored this idea further, it became apparent that some Paul Frank products were not selling well and some licensees who had been neglected by Saban over the prior year or two were concerned that this approach would lead to excess inventory.

32. Asiana nonetheless worked with licensees of the Paul Frank brand in Korea and managed to launch ten categories and hundreds of SKUs in May 2017.

33. Asiana believes that this launch involved at least 500 SKUs, but the exact numbers will not be available until it receives the second quarter royalty reports covering April, May and June 2017.

34. In May 2017, representatives of Asiana and Saban met at a licensing trade event in Las Vegas and discussed the Paul Frank brand. Asiana presented its Licensing Plan in a PowerPoint presentation and gave Saban hard copies of the Licensing Plan at that meeting.

35. Despite these and other significant efforts by Asiana, Saban sent Asiana a letter dated June 13, 2017 (the "Termination Letter") asserting that Asiana had materially breached the Agreement, that the Agreement would be terminated effective June 30, 2017, and that Asiana was not entitled to any commissions after June 30, 2017.

36. Saban apparently sent its Termination letter to an email address that was no longer used by Asiana. Asiana had notified Saban of the change of email

addresses in February of 2017, but Saban chose not to send the Termination Letter to Asiana's new email address.

37. As discussed in more detail below, on June 15, 2017, licensees of the Paul Frank brand in Korea informed Asiana that they had received communications from Saban stating that Saban had replaced Asiana with a new representative in Korea. This was the first Asiana heard of the purported termination of the Agreement.

38. On June 16, 2017, Saban sent a copy of the Termination Letter to the proper Asiana email address.

39. On June 19, 2017, Asiana received a hard copy of the Termination Letter, which it promptly rejected.

40. Saban's Termination Letter asserted that Section 3 of the Agreement required Asiana to perform in accordance with the Licensing Plan. Saban's Termination Letter then stated that Asiana's December 11, 2016 email suggested launching products in ten different categories with more than 500 SKUs in May 2017 and that this had not happened. This was incorrect in several important ways.

41. First, Saban's Termination Letter seems to assume that Asiana's December 11, 2016 email – which pre-dates the Agreement – constitutes the Licensing Plan that Asiana was to develop after the Agreement went into effect. This is incorrect. Since the agreement allows for termination if Asiana "fails to materially perform pursuant to the Licensing Plan" and the December 11, 2016 email was not the Licensing Plan, then there would be no basis to terminate the Agreement even if Asiana did not follow through on the concepts discussed in the December 11, 2016 email.

42. Second, the assertion in Saban's Termination Letter that Asiana "failed" to get products in ten categories and 500 SKUs launched is wrong. The Korean licensees did launch products in ten categories and Asiana expects that to cover 500 SKUs.

7
**COMPLAINT**

43. Third, even if the December 11, 2016 email was the Licensing Plan and even if the product launches by the Korean licensees did not hit all ten categories or all 500 SKUs, that still would not constitute a failure by Asiana to "materially perform pursuant to the Licensing Plan" that would justify termination pursuant to Section 7(b)(1) of the Agreement.

44. Saban's Termination Letter also alleged generically that Asiana had not complied with Sections 3(b) and 3(i) of the Agreement providing that Asiana would (i) actively seek out and solicit licensing opportunities and (ii) engage in such other activities as the parties mutually agreed on and use its best efforts to maximize revenue from licensing and merchandising and enhance the reputation of the brand. These allegations were false. Asiana complied with these provisions of the Agreement.

45. The only detail that Saban provided in its Termination Letter to support its baseless allegations that Asiana did not comply with Sections 3(b) and 3(i) of the Agreement was that two Korean companies that previously had licensed the Paul Frank brand had filed for bankruptcy, thus effectively ending their licenses. The bankruptcy of two Korean companies could not and did not constitute a breach by Asiana of the Agreement.

46. Furthermore, Saban was not permitted to terminate the Agreement without giving Asiana an opportunity to cure the alleged breaches, Saban, however, did not give Asiana an opportunity to cure the alleged material breaches or failure to perform pursuant to the Licensing Plan as required by Section 7(b)(i) of the Agreement. To the contrary, Saban's Termination Letter specifically and inaccurately claimed that the alleged breaches could not be cured.

47. Asiana had not received any written complaints from Saban about its performance prior to receiving Saban's purported termination letter.

48. On information and belief, Saban's assertions of alleged breaches and failure to materially perform pursuant to the Licensing Plan were manufactured in an

attempt by Saban to dismiss Asiana and retain a new licensing and merchandising agent in Korea despite the two year commitment that Saban and Asiana made in the Agreement.

49. On or about June 15, 2017, just two days after its June 13 Termination Letter (and *before* Asiana received that letter and more than two weeks before the purported effective date of that termination), Stan Wan of Saban contacted existing licensees of the Paul Frank brand in Korea and informed them that Saban would be ending its partnership with Asiana. Saban also informed the Korean licensees that it had "recently appointed Innocean [Worldwide] as [Saban's] new agency for Paul Frank in Korea effective July 1, 2017." Mr. Wan further informed the Korean licensees that he would be in Seoul on June 21 and 22 to meet with them at Innocean's office.

50. Mr. Wan of Saban copied a representative of Innocean on his June 15, 2017 communications with licensees in Korea. That same day, the representative of Innocean contacted the Korean licensees to introduce Innocean and reiterate that the licensees should come to the meeting at Innocean with Mr. Wan.

51. Saban's actions were improper and have caused significant harm to Asiana.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

52. Asiana reasserts, re-alleges, and incorporates by reference each and every allegation in the above paragraphs as if fully set forth herein.

53. Asiana and Saban entered into the Agreement as of January 1, 2017.

54. At all relevant times, the Agreement was in effect.

55. The Agreement is in force until December 31, 2018 unless terminated earlier pursuant to the express terms of the Agreement.

56. Asiana performed its obligations under the Agreement.

57. Saban purported to terminate the Agreement due to alleged breaches of the Agreement by Asiana and Asiana's alleged failure to materially perform pursuant to the Licensing Plan.

58. Asiana did not breach the Agreement and did not fail to materially perform pursuant to the Licensing Plan. There was no valid basis for Saban's purported termination of the Agreement.

59. The Agreement requires Saban to give Asiana written notice and an opportunity to cure any alleged breaches or failure to materially perform pursuant to the Licensing Plan before Saban can terminate the Agreement.

60. Saban failed to give Asiana an opportunity to cure the alleged breaches or failure to materially perform pursuant to the Licensing Plan that Saban claimed had occurred.

61. For the reasons described above, including but not limited to its improperly terminating the Agreement, Saban has materially breached the Agreement.

62. By virtue of the foregoing breaches, Asiana has been damaged in an amount to be determined at trial, but in an amount no less than $700,000.

## SECOND CAUSE OF ACTION

### (Breach of Covenant of Good Faith and Fair Dealing)

63. Asiana reasserts, re-alleges, and incorporates by reference each and every allegation in the above paragraphs as if fully set forth herein.

64. Asiana and Saban entered into the Agreement as of January 1, 2017.

65. Asiana performed its obligations under the Agreement.

66. Saban unfairly interfered with Asiana's right to receive the benefits of the Agreement as detailed above, including by wrongfully terminating the Agreement, failing to give Asiana adequate notice and an opportunity to cure any alleged breaches of the Agreement or material failures to perform pursuant to the Licensing Plan, and preemptively notifying licensees in Korea that Saban had ended its relationship with

7993992

Asiana, introducing licensees to Saban's purported new representative in Korea, and arranging a meeting among Saban, its purported new representative in Korea and the Korean licensees who had dealt with Asiana.

67. Asiana has been harmed by Saban's conduct.

68. By virtue of the foregoing, Asiana has been damaged in an amount to be determined at trial, but in no event less than $700,000.

## THIRD CAUSE OF ACTION

### (Tortious Interference with Prospective Economic Advantage)

69. Asiana reasserts, re-alleges, and incorporates by reference each and every allegation in the above paragraphs as if fully set forth herein.

70. Asiana had economic relationships with actual and potential licensees of the Paul Frank brand in Korea that would have resulted in additional economic benefits to Asiana.

71. Saban was aware of these relationships, as well as of Asiana's relationships with owners of other brands and with licensees of those other brands in Korea.

72. Saban intended to disrupt these relationships.

73. Saban disrupted these relationships by, among other things, wrongfully and prematurely notifying Korean licensees that Innocean would be its new agent in Korea prior to the termination of the Agreement, introducing Innocean to Korean licensees procured by Asiana prior to the termination of the Agreement, setting up a meeting in Korea among Innocean, Saban and Korean licensees procured by Asiana prior to the termination of the Agreement, manufacturing false grounds for terminating the Agreement, and terminating the Agreement.

74. As a result of Saban's actions, Asiana's relationships with actual and potential licensees of the Paul Frank brand in Korea have been disrupted.

75. As a result of Saban's actions, Asiana's reputation has been significantly and unjustly damaged.

76. As a result of Saban's actions, Asiana's relationships with actual and potential licensees of the other brands that Asiana represents in Korea have been damaged.

77. As a result of Saban's actions, Asiana's relationships with existing and potential licensors who need or seek representation in Korea have been damaged.

78. Asiana was harmed by Saban's actions has been damaged in an amount to be determined at trial, but in an amount no less than $500,000.

79. Plaintiff Asiana demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Asiana respectfully requests that judgment be entered:

    a. awarding Asiana damages in an amount to be determined at trial that is no less than $500,000 for Saban's breaches of the Agreement;

    b. awarding Asiana damages in an amount to be determined at trial that is no less than $500,000 for Saban's breach of the covenant of good faith and fair dealing;

    c. awarding Asiana damages in an amount to be determined at trial that is no less than $500,000 for Saban's interference with prospective economic advantage;

    d. awarding Asiana interest and the costs incurred in connection with this action; and

    e. awarding such other and further relief which this Court deems just and proper.



DATED:  June 26, 2017                Respectfully submitted,

/s/ Rex Hwang

Rex Hwang
GLASER WEIL FINK HOWARD
   AVCHEN & SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel: (310) 553-3000
Fax: (310) 556-2920
rhwang@glaserweil.com

Keith D. Nowak
Jeffrey S. Boxer
CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, New York 10005
Tel: (212) 732-3200
Fax: (212) 732-3232
nowak@clm.com
boxer@clm.com

*Attorneys for Plaintiff Asiana Licensing, Inc.*

## DEMAND FOR JURY TRIAL

Plaintiff Asiana respectfully requests a jury trial on all issues triable by a jury.

DATED: June 26, 2017

Respectfully submitted,

/s/ Rex Hwang

Rex Hwang
GLASER WEIL FINK HOWARD
　AVCHEN & SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel: (310) 553-3000
Fax: (310) 556-2920
rhwang@glaserweil.com

Keith D. Nowak
Jeffrey S. Boxer
CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, New York 10005
Tel: (212) 732-3200
Fax: (212) 732-3232
nowak@clm.com
boxer@clm.com

*Attorneys for Plaintiff Asiana Licensing, Inc.*

**COMPLAINT**

7993992